UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MIGUEL ROMERO MENDOZA (A# 092-107-308),

Petitioner,

v.

WARDEN,

Respondent.

No.  1:26-cv-01116 TLN SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  Because petitioner's § 1226(c) detention is still within the brief, constitutionally permissible period contemplated by the Supreme Court in Demore v. Kim, 538 U.S. 510 (2003), the undersigned recommends the petition be denied.

**I.      Factual and Procedural History**

Petitioner is a native of Mexico and currently detained at the Golden State Annex, within this judicial district.  ECF No. 1 at 2.  Petitioner entered the United States without inspection on October 1, 1981.  ECF No. 7-1 at 6.  He has several criminal convictions since that time, including most recently a July 12, 2002, conviction in the U.S. District Court for the Western District of Missouri, on three counts of distribution of a controlled substance, 21 U.S.C. § 841(a)(1), for which he was sentenced to 360 months in federal prison.  Id. at 8; id. at 16-27 ("Rap Sheet").

1

On December 9, 2025, after conducting a telephone interview with petitioner during his incarceration at USP Atwater, Immigration and Customs Enforcement (ICE) officials determined petitioner was removable under INA § 237(a)(2)(A)(iii) [8 U.S.C. § 1227(a)(2)(A)(iii)] based on his federal criminal convictions that qualified as aggravated felonies as defined in INA § 101(a)(43)(B) and (U).  ECF No. 7-1 at 6.  On December 26, 2025, petitioner was released from federal prison to ICE custody.  ECF No. 7-2 at 1; ECF No. 1 at 19.  ICE instituted removal proceedings against petitioner.

Petitioner filed the instant petition on February 9, 2026, challenging his prolonged detention under the Due Process Clause of the Fifth Amendment.  ECF No. 1.  Petitioner alleges he is being detained without having committed a new crime.  Id. at 19.  The facility is overcrowded, which exacerbates his chronic urticaria and weakened immune system.  Id. at 20.  Petitioner regrets his crimes and wishes to fight his immigration case out of custody and with appropriate supervision so that he can see his family, including his six grandchildren whom he has yet to meet.  Id. at 21-23.  By way of relief, petitioner requests his release or, in the alternative, a bond hearing before an immigration judge ("IJ") in which the government must prove, by clear and convincing evidence, that he poses a danger or flight risk.  Id. at 17.

Respondent asserts petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(B) on account of his 2002 conviction.  ECF No. 7 at 2-3.  Respondent first emphasizes that the Supreme Court upheld mandatory detention under Section 1226(c) as facially constitutional in Demore, 538 U.S. 510.  Id. at 3-4.  Next, respondent argues that petitioner's detention is constitutional under the Mathews v. Eldridge, 424 U.S. 319 (1976) framework and any of the various other procedural due process tests applied by district courts within this circuit.  Id. at 5-6.  Respondent explains that petitioner's detention has a "definite" termination point when his removal proceedings conclude and that the government has a strong interest in detaining individuals like petitioner who have serious prior criminal convictions.  Id.

**II.    Applicable Detention Statute**

The statutory framework governing immigration detention is complex.  "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or

2

discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

Respondent argues that petitioner is subject to mandatory detention per § 1226(c)(1)(B) based on his 2002 conviction under 8 U.S.C. § 841(a). ECF No. 7 at 2-3. Section 1226(c)(1)(B) states that "[t]he Attorney General shall take into custody" any noncitizen who is deportable by reason of having committed any offense covered in, *inter alia*, 8 U.S.C. § 1227(a)(2)(A)(iii). ICE officials charged petitioner as removable under § 1227(a)(2)(A)(iii), which applies to noncitizens "convicted of an aggravated felony[.]" Respondent identifies petitioner's 2002 conviction as an "aggravated felony" per 8 U.S.C. § 1101(a)(43)(B), which defines the term to include "illicit trafficking in a controlled substance." See, e.g., Sandhu v. United States, No. 2:05-cr-0449 KJM, 2020 WL 417542, at *5 (E.D. Cal. Jan. 27, 2020) (finding that the deportation consequences of a 21 U.S.C. § 841(a) conviction were "made express" in 8 U.S.C. §§ 1101(a)(43)(B) and 1227(a)(2)(A)(iii)). Accordingly, the undersigned finds petitioner's detention is governed by § 1226(c)(1)(B).

**III.    Legal Standard**

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

As respondent notes, "there is a general dearth of guidance on the appropriate test or standard to apply to an as-applied challenge to prolonged detention claims." ECF No. 7 at 5.

3

While observing "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)," the Ninth Circuit has expressly declined to address "[w]hether due process requires a bond hearing" in such situations.  Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022), cert. granted, judgment vacated, 144 S. Ct. 1339 (2024).  But it has previously expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so."  Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018).

The undersigned finds Mathews provides the appropriate test and recognizes the assigned district judge has also applied it to such challenges.  See, e.g., Jose G. M. L. v. Warden of the Golden State Annex Det. Facility, No. 1:26-cv-0047 TLN EFB, 2026 WL 472987, at *4 (E.D. Cal. Feb. 19, 2026); Gopal B. v. Albarran, No. 1:26-cv-1083 TLN CKD, 2026 WL 504736, at *4 (E.D. Cal. Feb. 24, 2026).  The undersigned is particularly persuaded by the Second Circuit's reasoning in Black v. Decker, 103 F.4th 133, 149 (2d Cir. 2024), that the Mathews test is flexible enough to account for the additional factors identified by the Third Circuit in German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203 (3d Cir. 2020),[1] and other district courts when deciding whether § 1226(c) detention has become unreasonably prolonged.  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

**IV.   Discussion**

**A.  As-Applied Framework**

The undersigned construes the petition as raising an as-applied, procedural due process challenge to the constitutionality of petitioner's detention under § 1226(c)(1)(B).  See ECF No. 1

_____

[1]  In German Santos, the Third Circuit declined to adopt a presumption of reasonableness or unreasonableness of any duration and instead evaluated duration along with three other factors: (1) whether the detention is likely to continue; (2) the reasons for the delay, such as a detainee's request for continuances; and (3) whether the noncitizen's conditions of confinement are "meaningfully different[ ] " from criminal punishment.  965 F.3d at 211.

4

at 9-13.  Although the Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c) in Demore, it did so with the understanding that such detention is relatively "brief" and "limited," and "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal."  Demore, 538 U.S. at 513, 529 n.12, 530.  Later, in Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court expressly recognized the right to bring as-applied challenges to the mandatory detention under § 1226(c): "Our decision today on the meaning of that statutory provision [8 U.S.C. § 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it."  Preap, 586 U.S. at 420.  Since Demore and Preap, "[c]ourts in the Ninth Circuit routinely review as-applied constitutional challenges to § 1226(c) detention." Jose G. M. L., 2026 WL 472987, at *3 (collecting cases).

But before proceeding to the analysis, the undersigned first rejects respondent's primary argument that petitioner's as-applied challenge fails because his detention is not "indefinite." ECF No. 7 at 5-6.  The Ninth Circuit has recognized that "'indefinite and potentially permanent' civil detention . . . clearly pose[s] serious *substantive* due process concerns."  Prieto-Romero v. Clark, 534 F.3d 1053, 1064 (9th Cir. 2008) (citing Zadvydas, 533 U.S. at 696) (emphasis added). The question presented here is not whether petitioner's detention appears to be "indefinite," but whether his mandatory detention of approximately three months without a fair detention hearing violates *procedural* due process.  As explained above, courts entertain such as-applied, procedural due process claims despite the Supreme Court's finding in Demore, 538 U.S. at 529, that § 1226 detention has a "definite termination point."  See Black, 103 F.4th at 149 ("Demore upheld the government's authority under section 1226(c) to detain noncitizens without an initial bond hearing for the brief period necessary for their removal proceedings. It said nothing about whether due process may *eventually* require a hearing.") (internal quotations and citations omitted) (emphasis in original).

In sum, while prolonged *and* indefinite detention is necessary to show entitlement to outright release under the Zadvydas framework, prolonged detention—even if not indefinite— may be sufficient to require a detention hearing.  See Lopez v. Garland, 631 F. Supp. 3d 870, 877

5

(E.D. Cal. 2022) ("[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.") (quotation omitted). With this framework in mind, the undersigned turns to the procedural due process analysis.

### B. Procedural Due Process Analysis

Turning to the first step, the facts of this case present several barriers to finding of a protected liberty interest. Petitioner undoubtedly has a liberty interest in "'freedom from prolonged detention' [that] is 'unquestionably substantial.'" Rodriguez Diaz v. Garland, 53 F.4th 1189, 1207 (9th Cir. 2022) (quoting Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011)). However, petitioner has been detained for just over three months. In Demore, the Supreme Court held the petitioner's six-month detention under § 1226(c) was "constitutionally permissible" despite being "somewhat longer than average." 538 U.S. at 530-531. Further, although the Ninth Circuit has not addressed when mandatory detention under § 1226(c) becomes prolonged, it has similarly referred to detentions longer than six months as prolonged "in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them." Rodriguez Diaz, 53 F.4th at 1207 (citations omitted); see also Zadvydas, 533 U.S. at 701 (recognizing a "6–month period" of presumptively reasonable post-removal-period detention). Therefore, given that the duration of petitioner's detention is still within the range contemplated in Demore, the undersigned finds that it does not yet implicate his protected interest against prolonged detention.

Moreover, this is not a case where petitioner accrued a liberty interest after being previously released by DHS or an IJ. Rather, he was released from federal prison and immediately arrested by ICE. As a fellow judge of this judicial district has explained, noncitizens do not acquire protected liberty interests in their release under such circumstances:

> "[T]he liberty interests of [an individual] who is re-arrested differ from the liberty interests of a detained person." *Guillermo M.R. v. Kaiser*, No. 25-cv-05436-RFL, 2025 WL 1810076, at *1 (N.D. Cal. June 30, 2025). In the former situation, where ICE detains an individual upon their release from a correctional facility, without any substantial intervening period of release, that individual has no opportunity "to form the [ ] enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). In contrast, a person who has been released

6

from physical restraint gains a "liberty [interest that] is valuable and must be seen as within the protection of the" Due Process Clause. *Id.*

Carballo v. Andrews, No. 1:25-cv-0978 KES EPG (HC), 2025 WL 2381464, at *4 (E.D. Cal. Aug. 15, 2025).  Thus, petitioner cannot claim a protected liberty interest based on continued freedom from any previous release from custody.

Petitioner still retains a general liberty interest in freedom from detention.  "'[F]reedom from imprisonment . . . lies at the heart of the liberty [the Due Process Clause] protects.'" Zadvydas, 533 U.S. at 690.  But applying the Mathews factors to that private interest, the relatively short duration of petitioner's § 1226(c) detention significantly diminishes its strength. "[T]he longer mandatory detention continues under 8 U.S.C. § 1226(c) beyond the 'brief' period authorized in Demore, the harder it becomes to justify without conducting an individualized bond hearing."  Sarr v. Scott, 765 F. Supp. 3d 1091, 1098 (W.D. Wash. 2025); cf. Black, 103 F.4th at 151 (finding first Mathews factor "weighs heavily in favor" of petitioners where they were detained for "far longer" than the petitioner in Demore).

Further, the risk of erroneous deprivation is currently low where the duration of petitioner's detention does not exceed that of the petitioner in Demore, and petitioner presumably had an opportunity to challenge his inclusion in a mandatory detention category pursuant to Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999)).  However, the risk of erroneous deprivation will increase over time as his detention becomes prolonged due to the "almost nonexistent procedural protections in place for section 1226(c) detainees."  Black, 103 F.4th at 152.

Finally, precedent dictates that "[t]he government has an obvious interest in 'protecting the public from dangerous criminal aliens.'"  Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 515).  Indeed, in Demore, the Supreme Court expressly upheld the brief detention of criminal noncitizens without an individualized determination of dangerousness.  See 510 U.S. at 528.  While this factor currently favors the government, it too will tilt toward petitioner as his detention without an individualized determination of danger or flight risk becomes prolonged. See Black, 103 F.4th at 153–54 ("The additional procedural safeguards we would allow here under Mathews do nothing to undercut those interests.  At any ordered bond hearing, the IJ would

7

assess on an individualized basis whether the noncitizen presents a flight risk or a danger to the community, as IJs routinely do for other noncitizen detainees."); Jimenez v. Wolf, No. 19-cv-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) ("Providing a bond hearing would not undercut the government's asserted interest in effecting removal.  After all, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community.") (citing In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006)).

On balance, the Mathews factors weigh against ordering a bond hearing at the current, three-month juncture of petitioner's immigration detention.  Accordingly, the undersigned recommends that the petition be denied.  However, these findings and recommendations do not preclude petitioner from seeking a bond hearing through a subsequent § 2241 petition at a later point in time should his detention become prolonged.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's (A# 092-107-308) application for a writ of habeas corpus be DENIED without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 2, 2026

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

8